STATE, Respondent, v. LINDSEY, Appellant.

*No. State 105. Argued January 5, 1972.—Decided February 1, 1972.*
(Also reported in 193 N. W. 2d 699.)

For the appellant there were briefs by *Carl W. Kuehne* and *Kaftan, Kaftan, Kaftan & Kuehne,* all of Green Bay, and oral orgument by *Carl W. Kuehne.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. The principal issue raised on this appeal is whether the appellant was denied his right to confront a witness whose testimony, as given at the preliminary hearing, was introduced at the trial.

*Right to confront witness.*

Michael Murphy testified at the preliminary hearing that on the day following the death of Miss Gonzales appellant told him that he had killed a Mexican girl the night before. Murphy did not appear at trial despite the state's efforts to locate him and compel him to appear. His testimony at the preliminary was read into the record in the presence of the jury. Appellant contends that the introduction of this testimony at the trial denied him the right to confront and cross-examine the witness against him.

Although both the state [1] and the federal [2] constitutions guarantee the accused the right to confront the witnesses against him, the rule has universally been applied that when a witness is not available for trial and when the defendant has had a prior opportunity to cross-examine that witness, former testimony may be introduced without violating either the constitutional mandates or the hear-

[1] Wis. Const. art. I, sec. 7.

[2] The confrontation clause of the sixth amendment applies to the states through the fourteenth amendment, *Pointer v. Texas* (1965), 380 U. S. 400, 85 Sup. Ct. 1065, 13 L. Ed. 2d 923.

say rule of evidence.[3] This was made clear by this court in *Gaertner v. State:* [4]

". . . The constitution guaranteed the common-law right of confrontation along with the common-law limitations and exceptions. As was true at common law, the right of confrontation is satisfied if the accused meets the witness face to face at the time he is testifying and then has the opportunity of cross-examining him. This does not necessarily have to occur at the trial. It may occur at the preliminary examination. While an opportunity for the finder of fact to observe the demeanor of witnesses is of advantage, it is not necessarily an essential element of the right of confrontation. *State ex rel. Drew v. Shaughnessy* (1933), 212 Wis. 322, 249 N. W. 522; *Spencer v. State* (1907), 132 Wis. 509, 112 N. W. 462."

In the present case, counsel for defendant had the opportunity to cross-examine Murphy at the preliminary. Lindsey's trial attorney was not limited in any way in his cross-examination of Murphy. The record indicates that the direct examination by the district attorney consumed about eight pages while the cross-examination consumed about nine. No question was disallowed as being beyond the scope of the preliminary or otherwise.

The state exercised due diligence in attempting to produce Murphy at the trial. It appeared simply that Murphy had disappeared. In a post-trial hearing on whether Murphy should be held in contempt for not appearing, the trial court found that while Murphy's leaving the state during the course of the trial had impeded the "orderly process of this court" it had not been done wilfully and, in fact, Murphy had done this because he was "more concerned with his own safety and the safety of his family." Murphy testified and the trial court

---

[3] Sec. 885.31, Stats.; *see also:* Annot. (1945), 159 A. L. R. 1240; 23 C. J. S., *Criminal Law,* p. 1060, sec. 1003; 29 Am. Jur. 2d, *Evidence,* p. 820, sec. 749; McCormick, *Evidence* (hornbook series), p. 483, sec. 231; 5 Wigmore, *Evidence* (3d ed.), p. 127, sec. 1396.

[4] (1967), 35 Wis. 2d 159, 167, 150 N. W. 2d 370.

found, after a corroborating investigation by the Brown county sheriff's office, that "he [Murphy] was indeed threatened by more than one person with respect to the likelihood and probability of his testifying in the matter involving Clifford Lindsey."

We are satisfied that on the record in this case every element is present as required for the admission at the trial of Murphy's testimony as given at the preliminary.[5]

Other issues are raised on this appeal as follows:

1. Was appellant prejudiced by the offer of certain evidence which was excluded by the court?

2. Did the circuit court abuse its discretion in denying the joint motion for a continuance?

3. Was appellant's legal counsel so ineffective as to amount to no legal counsel at all?

4. Was there sufficient credible evidence to sustain the conviction?

5. Should this court order a new trial in the interest of justice?

## Offer of evidence.

The state offered in evidence appellant's shirt which was stained with blood which matched that of Miss Gonzales. Prior to offering this shirt in evidence, the district attorney called two state crime laboratory technicians and several police officers to testify concerning the shirt. No objection was made at that time or until the shirt was actually offered into evidence. At this point the trial court sustained defense counsel's objection that the shirt was improperly seized. Appellant now argues that this exhibit was so prejudicial that, even if

[5] See State v. La Fernier (1969), 44 Wis. 2d 440, 171 N. W. 2d 408, distinguishing Inda v. State (1929), 198 Wis. 557, 224 N. W. 733, and Barber v. Page (1968), 390 U. S. 719, 88 Sup. Ct. 1318, 20 L. Ed. 2d 255.

the jury was instructed to disregard the exhibit, the mere offer is a basis for a new trial.

This court has recently indicated that when the trial court instructs a jury to disregard some evidence, such an instruction is presumed to efface any possible prejudice.[6] The appellant here has done nothing to rebut this presumption.

It would also seem that if counsel for defense thought this exhibit to be so prejudicial to his client he should have objected when the first testimony relating to the shirt was introduced, and not waited until after the damaging evidence was before the jury. It also should be noted that the fact that the blood on the shirt matched that of the deceased supports appellant's assertion that he had covered the girl's body with his shirt when the body was discovered the following morning. Thus it appears that in the instant case the jury, in any event, was shown an exhibit which was not greatly prejudicial to the appellant.

### Motion for continuance.

Four days prior to trial the district attorney of Brown county moved the circuit court for a continuance, asserting that the prosecution was unable to secure certain expert testimony relating to appellant's mental capacity. At the hearing on the motion defense counsel joined in the motion because he desired to secure additional testimony relating to the autopsy. The trial court was of the opinion that appellant was entitled to a speedy trial and that the public was entitled to a rapid determination of the matter in view of the serious nature of the crime. The trial court then denied the motion for a continuance.

The granting of a motion for a continuance is within the discretion of the court.[7] It is clear from the record

---

[6] *Taylor v. State* (1971), 52 Wis. 2d 453, 457, 190 N. W. 2d 208.

[7] *Elam v. State* (1971), 50 Wis. 2d 383, 184 N. W. 2d 176; *State v. Moffett* (1970), 46 Wis. 2d 164, 174 N. W. 2d 263.

that the motion was primarily advanced by the district attorney and was only acquiesced to by the defense counsel. It was the district attorney, not defense counsel, who desired more time to prepare his case relating to appellant's mental condition. The trial court exercised its discretion in the matter, noting its opinion that appellant was entitled to a speedy trial and that the public was enitled to an early determination of such a serious charge. There was no abuse of discretion by the trial court in denying the motion.

### Competency of counsel.

On this appeal we are again faced by the assertion that appellant's trial counsel was so ineffective as to deny appellant his constitutional right to legal representation. We have often stated that such counsel will be found to be inadequate only when it amounts to no representation at all.[8] The trial record in this case exceeds 875 pages. A review of that record demonstrates that trial counsel not only cross-examined each of the witnesses called by the state and made a number of important objections to the introduction of evidence, but also that he tried to consider alternative theories of the manner in which the girl met her death. Counsel suggested, for example, that the girl could have died of fright or could have become entangled in the branches while lost in the woods.

The principal argument advanced for holding the trial counsel inadequate in the view of present counsel is that trial counsel chose to prove appellant's insanity under the ALI test.[9] While it is true that the ALI test shifts the burden of proof from the state to the defendant it is

[8] *Milburn v. State* (1971), 50 Wis. 2d 53, 183 N. W. 2d 70.

[9] The American Law Institute, *Model Penal Code* (Proposed Official Draft, May 4, 1962), p. 66, sec. 4.01, adopted as an option in Wisconsin in *State v. Shoffner* (1966), 31 Wis. 2d 412, 143 N. W. 2d 458.

equally true that the test for insanity is lower under the ALI test than under the *Esser* test.[10] There is no basis for concluding that the fact that counsel chose the ALI test establishes the incompetency of his legal representation. A review of the entire record on the question of the appellant's insanity demonstrates that trial counsel was faced with a very difficult situation and simply failed to prove his case.

We are satisfied from a review of the entire record that appellant was adequately represented by counsel.

### Sufficiency of evidence.

We are satisfied that there is credible evidence which, if believed by the trier of fact, is sufficient to prove appellant's guilt beyond a reasonable doubt. Appellant argues that the evidence might support alternative theories of the crime. On appeal this court is not concerned with the evidence which might support other theories of the crime, it is concerned only with ascertaining whether the trier of fact could, acting reasonably, exclude these other theories and make findings supporting the guilt of a defendant.

In the present case there was not only the admission of appellant that he had killed a Mexican girl on the fatal night but also there is strong circumstantial evidence of appellant's guilt. He left the cottage with the murdered girl, there was a scream, there were two knocks on the wall of the cottage shortly after they left, and there was a telltale mark on the rear wall of the cottage. Circumstantial evidence alone would support the conviction.[11] The admission, if the testimony concerning it is believed, seals the conviction.

[10] *State v. Hebard* (1971), 50 Wis. 2d 408, 422, 184 N. W. 2d 156.

[11] *State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349.

*Reversal in the interest of justice.*

Appellant finally argues that this court should exercise its discretionary power, under sec. 251.09, Stats., and order a new trial in the interest of justice on the ground of the accumulated effects of all of appellant's arguments, plus the fact that the missing witness, Michael Murphy, subsequently returned to Green Bay.

This court will exercise its discretionary power under sec. 251.09, Stats., only when it appears that a new trial would probably result in acquittal.[12] The power is used sparingly. A review of the entire proceedings satisfies us that justice did not miscarry in this case and that there is no basis for this court to utilize its discretionary power in ordering a new trial.

*By the Court.*—Judgment affirmed.

---

[12] *State v. Heidelbach* (1971), 49 Wis. 2d 350, 360, 182 N. W. 2d 497.